UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ADIL BIN MUHAMMAD AL WIRGHI,   :
   Detainee,         :
   Guantánamo Bay Naval Station :
   Guantánamo Bay, Cuba,   :
               :

TAWISS BINT HASAN AL WIRGHI,  :
   as Next Friend of      :
   Adil bin Muhammad al Wirghi, :
               :

    Petitioners/Plaintiffs,   :
               :
     v.         :
               :

GEORGE W. BUSH,       :   No. 05-CV-1497 (RCL)
   President of the United States  :
   The White House     :
   1600 Pennsylvania Avenue, NW :
   Washington, D.C. 20301-1000, :
               :

DONALD RUMSFELD,     :
   Secretary        :
   United States Department of Defense :
   1000 Defense Pentagon   :
   Washington, D.C. 20301-1000, :
               :

ARMY BRIG. GEN. JAY HOOD,   :
   Commander, Joint Task Force  :
   Guantánamo Bay Naval Station :
   JTF-GTMO       :
   APO AE 09360, and    :
               :

ARMY COL. MIKE BUMGARNER,  :
   Commander, Joint Detention Operations :
   Group, Guantánamo Bay Naval Station :
   JTF-GTMO       :
   APO AE 09360,     :
               :
    Respondents/Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Adil bin Muhammad al Wirghi, a civilian designated as an "enemy combatant" by the President of the United States, is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any process by which he may challenge his designation and detention. Mr. al Wirghi is being held in violation of the United States Constitution, the laws and treaties of the United States, and customary international law. Accordingly, Mr. al Wirghi seeks a Writ of Habeas Corpus on his own behalf and through his Next Friend, his mother Tawiss bint Hasan al Wirghi. This Court should issue a Writ of Habeas Corpus compelling Respondents either to release Mr. al Wirghi or to establish in this Court the lawful basis for Mr. al Wirghi's detention. The Court should also order injunctive and declaratory relief.

## JURISDICTION AND VENUE

1.   Mr. al Wirghi and his mother Mrs. al Wirghi bring this action under 28 U.S.C. §§ 2241(c)(1), (c)(3), and to enforce their rights under the United States Constitution, the Geneva Conventions, the treaties of the United States and customary international law.

2.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202, and 5 U.S.C. § 702.

3.   This Court has authority under 28 U.S.C. § 2241 to grant a Writ of Habeas Corpus and, under 28 U.S.C. § 2242, to entertain the Petition filed by Mrs. al Wirghi as Next Friend of her son Mr. al Wirghi.

4.   This Court is empowered by 28 U.S.C. § 2201 to declare the rights and other legal relations of the parties herein. This Court is further empowered to effectuate

and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

5.    Venue is proper in the United States District Court for the District of Columbia because at least one Respondent resides in this district, a substantial part of the events or omissions giving rising to the claims herein occurred in this district, at least one Respondent can be found in this district, and all Respondents are either officers or employees of the United States or an agency thereof acting in their official capacities. *See* 28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

6.    Mr. al Wirghi, a citizen of Tunisia, is presently incarcerated at Guantánamo. *See* Declaration of Tawiss bint Hasan al Wirghi ("al Wirghi Decl."), at ¶¶ 1, 8, attached as Exhibit A.  Mr. al Wirghi has been imprisoned since early 2002.

7.    Mr. al Wirghi was born and raised in Tunisia. (*Id.* at ¶ 5.)  He received a sixth grade education and does not have knowledge of English. (*Id.* at ¶ 4.)  While living in Tunisia, Mr. al Wirghi worked in a clothing store business with his father. (*Id.* at ¶ 5.)

8.    Mr. al Wirghi expressed his desire for legal representation to his mother Mrs. al Wirghi. (*Id.* at ¶ 6.)  Because Mr. al Wirghi has been denied access to legal counsel and to the courts of the United States, his mother Mrs. al Wirghi acts as his Next Friend. (*Id.* at ¶ 10; *see also* Declaration of Bushra Hamida ("Hamida Decl."), at ¶¶ 4-6, attached as Exhibit B.)

9.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military.  Mr. al Wirghi is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and

usages of war or, alternatively, pursuant to the Executive Order issued by President Bush on November 13, 2001, "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Mr. al Wirghi's unlawful detention.

10.     Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Mr. al Wirghi.

11.     Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo. He has supervisory responsibility for Mr. al Wirghi.

12.     Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Mr. al Wirghi is presently held. Army Colonel Bumgarner is the immediate custodian responsible for Mr. al Wirghi's detention.

13.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents and employees, and contractor employees.

## STATEMENT OF FACTS

14.     Upon information and belief, Mr. al Wirghi is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under *any definition adopted by the government in any civil or military proceeding.* (al Wirghi Decl. ¶ 9.)

15.     Upon information and belief, Mr. al Wirghi is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi* v. *Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

16.     Upon information and belief, at the time of his seizure and detention, Mr. al Wirghi was not a member of the Taliban or al Qaeda forces, or a supporter of such forces.

17.     Upon information and belief, Mr. al Wirghi did not have any involvement, direct or indirect, in the September 11, 2001 terrorist attacks on the United States, the ensuing armed conflict, or any act of international terrorism attributed by the United States to al Qaeda or any other terrorist group.

18.     Mr. al Wirghi remains incarcerated at the United States Naval Base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

19.     Mr. al Wirghi seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunal (described below).

20.     Mr. al Wirghi has not been afforded any procedures that would satisfy his rights under the most fundamental notions of due process, the United States Constitution, the laws and treaties of the United States, or customary international law.

21.     Mr. al Wirghi desires to pursue in the United States courts every available legal challenge to the lawfulness of his detention.

**The Joint Resolution**

22.     In the wake of the September 11, 2001 attacks, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (2001) ("Joint Resolution").

23.     As Mr. al Wirghi did not participate in the armed conflict in Afghanistan at any time and did not plan, authorize, commit or aid the terrorist attacks on September 11, 2001, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

**The Executive Order**

24.     On November 13, 2001, President Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone President Bush has "reason to believe":

–5–

i.    is or was a member of the organization known as al Qaeda;
ii.   has engaged in, aided or abetted, or conspired to commit, acts of
      international terrorism, or acts in preparation therefor, that have caused,
      threaten to cause, or have as their aim to cause, injury to or adverse effects
      on the United States, its citizens, national security, foreign policy, or
      economy; or
iii.  has knowingly harbored one or more individuals described in
      subparagraphs (i) and (ii).

Executive Order, 66 Fed. Reg. 57,833, § 2 (November 13, 2001).

25.     The Executive Order was promulgated in the United States and in this

judicial district, Respondents' decision to detain Mr. al Wirghi at Guantánamo was made

in this district, and Respondents' decision to continue detaining Mr. al Wirghi was made

in this judicial district.

26.     The Executive Order was neither authorized nor directed by Congress, and

is beyond the scope of the Joint Resolution of September 18, 2001.

27.     The Executive Order purports to vest President Bush with the sole

discretion to identify individuals who fall within its purview.  It establishes no standards

governing the exercise of President Bush's discretion.  Once a person has been detained,

the Executive Order contains no provision for that person to be notified of the charges he

may face.  The Executive Order authorizes detainees to be confined indefinitely without

charges.  It contains no provision for a detainee to be notified of his rights under domestic

or international law, and provides neither the right to counsel, nor the rights to notice of

consular protection or to consular access at the detainee's request.  The Executive Order

provides no right to appear before a neutral tribunal to review the legality of a detainee's

continued detention and contains no provision for recourse to an Article III court.  In fact,

the Executive Order expressly bars any form of judicial review and authorizes indefinite

and unreviewable detention.

28.    Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Mr. al Wirghi is subject to the Executive Order.

29.    Aside from an unsupported assertion that all detainees at Guantánamo are "enemy combatants," upon information and belief, Respondents have advanced no justification for Mr. al Wirghi's arrest and incarceration.

30.    Mr. al Wirghi has not been and is not being detained lawfully pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Upon information and belief, Mr. al Wirghi was not arrested or detained by the United States in the course of an armed conflict.

31.    Mr. al Wirghi is not properly subject to the Executive Order.

**Guantánamo Bay Naval Station**

32.    On or about January 11, 2002, the United States Military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

33.    On July 7, 2004, Deputy Secretary of Defense Paul Wolfowitz signed an order directing the Secretary of the Navy to establish the Combatant Status Review Tribunal ("CSRT") to be convened at Guantánamo. The ostensible purpose of the CSRT is to determine on a case-by-case basis whether a detainee is "properly detained as an enemy combatant." Memorandum from the Secretary of the Navy at 3, July 7, 2004,

http://www.defenselink.mil/news/Jul2004/d20040707review.pdf (last visited Nov. 30, 2005).

34.     The CSRT procedures fail to satisfy constitutional due process requirements. The CSRT's "extensive reliance on classified information in its resolution of 'enemy combatant' status, the detainees' inability to review that information, and the prohibition of assistance by counsel jointly deprive the detainees of sufficient notice of the factual bases for their detention and deny them a fair opportunity to challenge their incarceration." *In re Guantánamo Detainee Cases*, 355 F. Supp. 2d 443, 472 (D.D.C. 2005).

35.     On a date unknown to counsel but known to Respondents, the United States military transferred Mr. al Wirghi to Guantánamo, where, on information and belief, he has been held ever since, in the custody and control of Respondents.

36.     "By the express terms of its agreements with Cuba, the United States exercises 'complete jurisdiction and control' over the Guantánamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses." *Rasul* v. *Bush*, 124 S. Ct. 2686, 2696 (2004).

37.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul*, 124 S. Ct. at 2698.

**The Conditions of Detention at Guantánamo**

38.     Since gaining control of Mr. al Wirghi, the United States Military has held him virtually *incommunicado* under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*, United Nations Press Release, "United

Nations Human Rights Experts Express Continued Concern About Situation of

Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross,

Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International

Committee of the Red Cross, Operational Update, "US Detention Related to the Events

of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004;

Amnesty International, "United States of America: Human Dignity Denied: Torture and

Accountability in the 'War on Terror,'" at 22 (Oct. 27, 2004), http://web.amnesty.org

/library/Index/ENGAMR511452004 (last visited Nov. 30, 2005); *see also* Barry C.

Scheck, "Abuse of Detainees at Guantanamo Bay," The Nat'l Assoc. of Criminal

Defense Lawyers Champion, Nov. 2004, at 4-5.

    39.    Indeed, many of these violations – including isolation for up to 30 days,

28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory

assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror –

were actually interrogation techniques approved for use at Guantánamo by the most

senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II,

General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working

Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of

Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf (last visited Nov. 30, 2005). The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See* "Report Details Guantanamo Abuses," *Assoc. Press*, Nov. 4, 2004.

40.     In a confidential report to the United States government, the International Committee of the Red Cross ("ICRC") charged the United States Military with intentional use of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture" during interrogations. *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See* "Guantánamo: An Icon of Lawlessness," Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

41.     The Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a

detainee's face, to try to break Muslim detainees. "Gitmo Soldier Details Sexual
Tactics," *Associated Press*, Jan. 27, 2005. *See also* Neil A. Lewis and Eric Schmitt,
"Inquiry Finds Abuses at Guantánamo Bay," *New York Times*, May 1, 2005, at 35;
Paisley Dodds, "Gitmo Prisoners Told Panel about Abuse," *Associated Press*, May 31,
2005.

    42.    The unlawful and unconstitutional interrogation techniques used by
Respondents at Guantánamo include not only physical and psychological abuse but also
other impermissible conduct contrary to due process requirements, including, upon
information and belief, having agents of the Government present themselves as lawyers
for the detainees during meetings with the detainees, for the purpose of extracting
information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo
Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

    43.    In fact, some military lawyers have objected to and tried to stop such
unlawful interrogations. "Judge Advocates – uniformed legal advisers known as JAGs
who were assigned to a secret war crimes task force – repeatedly objected to aggressive
interrogations by a separate intelligence unit at Camp Delta, where Taliban and al Qaida
suspects have been jailed since January 2002. . . . The military lawyers' actions had never
been disclosed and are the first known cases of lower-level officers resisting
interrogations at the Cuban camp that might constitute torture." James Gordon Meek,
"At War With Gitmo Grilling," *New York Daily News*, Feb. 13, 2005.

    44.    Upon information and belief, Mr. al Wirghi is among those who have
suffered or will suffer similar torturous interrogations described above. Upon
information and belief, Mr. al Wirghi was held or is being held in the "Romeo" block, an

–11–

isolation wing at Guantánamo used to hold prisoners for "non-cooperation," which includes failure to hand over a bar of soap and refusal to answer repetitive and abusive questions. Prisoners in the "Romeo" block are held in solitary confinement with nothing but a pair of orange shorts.

45.     Upon information and belief, Mr. al Wirghi is among those who have been or will be forced to provide involuntary statements to Respondents' agents at Guantánamo, and have been or will be interrogated repeatedly by agents of the United States Department of Defense, United States Department of Justice, and the Central Intelligence Agency, even though he has not been charged with an offense and has not been notified of any pending or contemplated charges.

46.     Mr. al Wirghi has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees, or customary international law. Indeed, Respondents have taken the position that Mr. al Wirghi should not be informed of these rights. As a result, he lacks any ability to protect or to vindicate his rights under domestic and international law.

47.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by United States Military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under the direction of

President Bush. *See* Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

48.     In published statements, President Bush, Secretary Rumsfeld and other military officials have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.*, Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, *Associated Press*, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, Feb. 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

49.     However, as reported by the *Wall Street Journal*, "American commanders acknowledge that many prisoners shouldn't have been locked up here in the first place because they weren't dangerous and didn't know anything of value. 'Sometimes, we just didn't get the right folks,' says Brg. Gen. Jay Hood, Guantanamo's current commander."

Christopher Cooper, "Detention Plan: In Guantanamo, Prisoners Languish in Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005.   Indeed, as recognized by deputy commander, Gen. Martin Lucenti, "Most of these guys weren't fighting.  They were running."  Mark Huband, "U.S. Officer Predicts Guantanamo Releases," *Financial Times*, Oct. 4, 2004.

50.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be detained at Guantánamo indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Nov. 30, 2005).

51.    Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold detainees like Mr. al Wirghi under their current conditions indefinitely.  *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK) (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24, statements of Principal Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1.

**Rendition**

52.    During interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition.  This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture.  *See* Jane Mayer, "Outsourcing Torture: The Secret History of America's 'Extraordinary Rendition' Program," *The New Yorker*, Feb. 14, 2005, at 106.

53.    The United States Government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries, . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

54.    Upon information and belief, Mr. al Wirghi is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(Denial of Due Process and Unlawful Deprivation of Liberty — the Fifth Amendment to the United States Constitution)**

55.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

56.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

57.    President Bush has ordered the prolonged, indefinite and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders.  Respondents' actions have denied Mr. al Wirghi the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

58.    To the extent that Mr. al Wirghi's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Mr. al Wirghi.

59.    Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

–16–

## SECOND CLAIM FOR RELIEF

### (Unlawful Conditions of Confinement — the Fifth Amendment to the United States Constitution)

60.     Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

61.     The Respondents, acting under color of law, have violated and continue to violate the right of Mr. al Wirghi to be free from arbitrary, prolonged and indefinite detention, in violation of the due process clause of the Fifth Amendment to the United States Constitution.

62.     Accordingly, Mr. al Wirghi is entitled to declaratory and injunctive relief as well as any other relief the Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### (Arbitrary Denial of Due Process — the Geneva Conventions)

63.     Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

64.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Mr. al Wirghi the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

65.     Violations of the Geneva Conventions are direct treaty violations as well as violations of customary international law, and therefore constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

66.    Respondents are liable for the conduct described above, insofar as they set the conditions and directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

67.    Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### FOURTH CLAIM FOR RELIEF

**(Denial of Due Process — International Law and
United States Military Regulations)**

68.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

69.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Mr. al Wirghi the process accorded to persons seized and detained by the United States Military in times of armed conflict, in violation of customary international law, the Third and Fourth Geneva Conventions, Articles IX and XIV of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man.

70.    Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of Mr. al Wirghi, without legal process, in violation of binding obligations of the United States under international law.  Respondents Rumsfeld, Hood and Bumgarner are likewise acting in violation of international law since they are acting at the President's direction.

71.    By prolonging the indefinite and arbitrary detention of Mr. al Wirghi without legal process, Respondents, acting under color of law, have also violated and continue to violate the rights afforded to persons seized by the United States Military in

times of armed conflict, as established by, among other regulations, the regulations of the United States Military.

72.     Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>FIFTH CLAIM FOR RELIEF</u>

**(Arbitrary, Prolonged and Indefinite Detention — International Law and United States Military Regulations)**

73.     Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

74.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Mr. al Wirghi to be free from arbitrary, prolonged and indefinite detention, in violation of customary international law, the Third and Fourth Geneva Conventions, Articles IX and XIV of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man.

75.     On its face and as applied to Mr. al Wirghi, the Executive Order violates binding obligations of the United States under international law, customary international law, the Third and Fourth Geneva Conventions, Articles IX and XIV of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man.

76.     By prolonging the indefinite and arbitrary detention of Mr. al Wirghi, Respondents, acting under color of law, have also violated and continue to violate the rights afforded to persons seized by the United States Military in times of armed conflict, as established, among other regulations, the regulations of the United States Military.

77.    Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SIXTH CLAIM FOR RELIEF

### (Unlawful Detention — Article II of the United States Constitution)

78.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

79.    Upon information and belief, Mr. al Wirghi is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the place of war or occupied territory, or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi* v. *Rumsfeld*, 124 S. Ct. 2633, 2642 n.1 (2004).

80.    By the actions described above, President Bush exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Mr. al Wirghi and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Mr. al Wirghi.

81.    The military seizure and detention of Mr. al Wirghi by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Mr. al Wirghi's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Mr. al Wirghi.

82.    To the extent that Respondents assert that their authority to detain Mr. al Wirghi derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the United States Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

83.    Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

### (Alien Tort Statute — Torture)

84.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

85.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Mr. al Wirghi in order to obtain coerced information or confessions from him, punish or intimidate him, or achieve other purposes.  Among other abuses, upon information and belief, Mr. al Wirghi has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extreme temperatures; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

–21–

86.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

87.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Mr. al Wirghi.

88.    Mr. al Wirghi was forced to suffer and continues to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### (Alien Tort Statute — War Crimes)

89.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

90.    By the actions described above, Respondents' acts of directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhuman treatment of Mr. al Wirghi constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

–22–

91.    As a result of Respondents' unlawful conduct, Mr. al Wirghi has been forced to suffer and continues to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

### NINTH CLAIM FOR RELIEF

**(Alien Tort Statute — Arbitrary Arrest and Prolonged Arbitrary Detention)**

92.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

93.    The acts described herein constitute arbitrary arrest and prolonged arbitrary detention of Mr. al Wirghi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

94.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Mr. al Wirghi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350.

95.    As a result of Respondents' unlawful conduct, Mr. al Wirghi has been and continues to be deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

–23–

## TENTH CLAIM FOR RELIEF

### (Alien Tort Statute — Cruel, Inhuman or Degrading Treatment)

96.     Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

97.     The acts described herein had the intent and the effect of grossly humiliating and debasing Mr. al Wirghi, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

98.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

99.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Mr. al Wirghi.

100.    Mr. al Wirghi was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF

### (Alien Tort Statute — Enforced Disappearance)

101.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

102.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Mr. al Wirghi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

103.    As a result of Respondents' unlawful conduct, Mr. al Wirghi has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

**(Administrative Procedures Act — Arbitrary and Capricious Unlawful Detention )**

104.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

105.    Army Regulation 190-8 prohibits the arbitrary and capricious detention of civilians who were seized away from the field of battle or outside occupied territory, or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

106.    By arbitrarily and capriciously detaining Mr. al Wirghi in military custody for over three years, by denying him the due process accorded to persons seized and detained by the United States Military in times of armed conflict, and by directing,

–25–

ordering, confirming, ratifying, and/or conspiring to unlawfully subject Mr. al Wirghi to torture and/or cruel, inhuman or degrading treatment, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

107.    Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>THIRTEENTH CLAIM FOR RELIEF</u>

**(Administrative Procedures Act — Arbitrary and Capricious Denial of Due Process)**

108.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

109.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Mr. al Wirghi the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

110.    Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>FOURTEENTH CLAIM FOR RELIEF</u>

**(Administrative Procedures Act — Torture and Cruel, Inhuman or Degrading Treatment )**

111.    Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

112.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or

conspiring to unlawfully subject Mr. al Wirghi to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

113.     Accordingly, Mr. al Wirghi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

**FIFTEENTH CLAIM FOR RELIEF**

**(Rendition)**

114.     Mr. al Wirghi and his mother Mrs. al Wirghi incorporate by reference all preceding paragraphs as if set forth fully herein.

115.     Upon information and belief, Mr. al Wirghi is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Mr. al Wirghi to such a country creates a foreseeable and direct risk that he will be subjected to torture, and therefore constitutes a violation of Mr. al Wirghi's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, and customary international law, which may be vindicated under the Alien Tort Statute.

116.     Moreover, such a transfer that creates a foreseeable and direct risk that Mr. al Wirghi will be subjected to torture constitutes a direct violation of his rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

117.     Accordingly, Mr. al Wirghi is entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.      Designate Mrs. al Wirghi as Next Friend of Mr. al Wirghi;

2.      Grant the Writ of Habeas Corpus and order Respondents to release Mr. al Wirghi from his current unlawful detention;

3.      Order that Mr. al Wirghi be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.      Order that Mr. al Wirghi not be transferred to any other country without the specific written agreement of Mr. al Wirghi and his counsel while this action is pending;

5.      Order that Mr. al Wirghi not be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subjected to torture;

6.      Order Respondents to allow counsel to meet and confer with Mr. al Wirghi, in private and unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Mr. al Wirghi, direct or indirect, while this litigation is pending;

8.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Mr. al Wirghi;

9.      Order and declare that the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the

–28–

Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

10.     Order and declare that the prolonged, indefinite, and restrictive detention of Mr. al Wirghi without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States Military, the Geneva Conventions, treaties of the United States, and customary international humanitarian law; and

11.     Grant such other relief as the Court may deem necessary and appropriate to protect Mr. al Wirghi's rights under the common law, the United States Constitution, federal statutory law, and international law.

Dated: December 1, 2005                    Respectfully submitted,

Michael A. Cooper
Suhana S. Han
125 Broad Street
New York, New York  10004
Tel. (212) 558-4000
Fax: (212) 558-3588

*Counsel for Petitioners Adil bin Muhammad*
*al Wirghi and Tawiss bint Hasan al Wirghi*

Of Counsel
Barbara Olshansky (NY 3635)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

–30–

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Amended

Petition for a Writ of Habeas Corpus and accompanying exhibits to be served on this

1st  day of December 2005, by U.S. registered mail on:

Kenneth L. Wainstein
U.S. Attorney
District of Columbia District
Judiciary Center
555 4th Street, N.W.
Washington, D.C.  20530

Donald Rumsfeld
Secretary, United States Department
    of  Defense
1000 Defense Pentagon
Washington, D.C.  20301-1000

Alberto R. Gonzales
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., N.W.
Room 511
Washington, D.C.  20530

Army Brig. Gen. Jay Hood
Commander, Joint Task Force – GTMO
JTF-GTMO
APO AE  09360

United States Army
Army Pentagon
Washington, D.C.  20310-0200

George W. Bush
President, United States of America
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C.  20301-1000

Army Col. Mike Bumgarner
Commander, JDOG
JTF-GTMO
APO AE  09360

United States Army
Army Pentagon
Washington, D.C.  20310-0200

Suhana S. Han

## <u>CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION</u>

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated:  December 1, 2005

Michael A. Cooper
Suhana S. Han
125 Broad Street
New York, New York  10004
Tel. (212) 558-4000
Fax: (212) 558-3588

*Counsel for Petitioners Adil bin Muhammad al Wirghi and Tawiss bint Hasan al Wirghi*