# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                               :
                                                               :
ADIL BIN MUHAMMAD AL WIRGHI,                                   :
     Detainee,                                                 :
     Guantánamo Bay Naval Station                              :
     Guantánamo Bay, Cuba,                                     :
                                                               :
                                                               :
TAWISS BINT HASAN AL WIRGHI,                                   :
     as Next Friend of                                         :
     Adil bin Muhammad al Wirghi,                              :    No. 05-CV-1497 (RCL)
                                                               :
     Petitioners,                                              :
                                                               :
                                                               :
          v.                                                   :
                                                               :
                                                               :
GEORGE W. BUSH, DONALD RUMSFELD,                               :
ARMY BRIG. GEN. JAY HOOD, and ARMY                             :
COL. MIKE BUMGARNER,                                           :
                                                               :
                                                               :
     Respondents.                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

**DECLARATION OF ZACHARY PHILIP KATZNELSON**

1. My name is Zachary Katznelson. I am a member of the Bar of the State of California, Bar Number 209489. I am Senior Counsel for Reprieve, a non-profit based in the United Kingdom.

2. I represent habeas petitioner Abdullah Bin Omar Al Hajji in *Sliti* v. *Bush*, Case No. 05-CV-429 (RJL).

3. On June 17, 2007, Mr. Al Hajji was returned to Tunisia from Guantánamo Bay, over my strenuous objections, objections that I communicated numerous times to counsel for Respondents. I objected due to: 1) Tunisia's horrendous human rights record, as noted repeatedly by the State Department; 2) the specific threat of torture and abuse facing Mr. Al Hajji; and 3) the fact that Mr. Al Hajji had

        been convicted in absentia of opposing the Tunisian government and sentenced to at least 10 years in prison. Tunisia is notorious for using evidence gained from torture at such trials, and for refusing to permit defendants a proper defense. Mr. Al Hajji did not know of the trial when it took place and therefore had no opportunity to defend himself. Indeed, he did not learn of the trial and conviction until Respondents sent him to Tunisia last month.

4. Respondents ignored my repeated requests for an emergency meeting with Mr. Al Hajji to inform him of the dangers he faced.

5. Since Mr. Al Hajji's return to Tunisia, my fears have unfortunately been realized. Mr. Al Hajji was immediately sent to prison upon his arrival in Tunisia. He was held incommunicado for several days. When a visitor was finally able to see Mr. Al Hajji, Mr. Al Hajji reported that he had been beaten and threatened by the Tunisian authorities. Mr. Al Hajji reported that his Tunisian interrogators had threatened to rape his wife and daughters if he did not confess. The visitor reported that Mr. Al Hajji appeared drugged, speaking remarkably slowly and having extreme trouble focusing. Mr. Al Hajji was described as a shell of a man.

6. On the next visit, Mr. Al Hajji reported that his interrogators threatened to bring his wife and daughters to the prison, so they could torture Mr. Al Hajji in front of them. Mr. Al Hajji was reportedly so debilitated during this visit that he could not recognize his own son.

7. In November 2007, I attended the re-trial of Mr. Al Hajji before a military court in Tunisia, as did representatives of the American Embassy in Tunis. No rational observer could characterize the proceedings as fair. Mr. Al Hajji's lawyers were

       not permitted to visit him in the days leading up to the trial. At the proceeding, not a shred of credible proof was presented against Mr. Al Hajji – no testimony, no documents, no photos. Nothing. The sole "evidence" was a conclusory report from the security services from years before, citing two informants. Those two informants stated to Mr. Al Hajji's lawyers that they never said any such thing to the security services. Mr. Al Hajji's lawyers informed the court of this fact, but the men were apparently not allowed to testify. The Tunisian prosecutor failed to prove that Mr. Al Hajji was a member of any terrorist group, let alone do so beyond a reasonable doubt. There was no due process. Yet, Mr. Al Hajji was found guilty and sentenced to seven years in prison, plus five more years of what amounts to house arrest. Since Mr. Al Hajji's conviction, he has reported frequent harassment in his cell by security officials, including the slashing and ripping of his clothes.

8. Each time I learned new information about Mr. Al Hajji, I immediately informed counsel for Respondents. I have at all times kept counsel for Respondents apprised of the situation. I have requested information as to the diplomatic assurances received from Tunisia and the steps Respondents were taking to ensure their enforcement. I have yet to receive a substantive response; rather, I have merely been told by Respondents' counsel that my information and concerns have been forwarded to Respondents.

9. I have learned that another Tunisian, Lutfi Ben Swei Lagha, was transferred from Guantánamo to Tunisia with Mr. Al Hajji. Mr. Lagha is not represented by habeas counsel. He is also being held in prison in Tunisia. He too has been put

on trial before a military court. Neutral observers, including members of the media, reported to me that no proof was offered against him. However, he was convicted of membership in a terrorist group and sentenced to three years in prison. Due to his lack of representation by habeas counsel, his current welfare and safety remain a mystery.

10. On February 22, 2007, I received an e-mail from a lawyer for Respondents stating that Mr. Al Hajji had "been approved to leave Guantanamo, subject to the process for making appropriate diplomatic arrangements for his departure."

11. Any diplomatic assurances offered by Tunisia to Respondents appear to have been blatantly violated. I have no indication that Respondents have done anything to enforce such assurances for Mr. Al Hajji or Mr. Lagha.

12. Based upon the treatment suffered by Mr. Al Hajji and Mr. Lagha since their return to Tunisia, I believe it is substantially likely that Mr. El Ouerghi will be detained and tortured upon his return to Tunisia. There is a strong probability that any assurances offered by Tunisia regarding Mr. El Ouerghi's treatment would be violated.

13. I declare under penalty of perjury under the laws of the United States that the foregoing is true to the best of my knowledge and belief.

London, England

DATE: March 3, 2008

_____
ZACHARY PHILIP KATZNELSON