UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
ADIL BIN MUHAMMAD AL WIRGHI,           :
    Detainee,                          :
    Guantánamo Bay Naval Station       :
    Guantánamo Bay, Cuba,              :
:
TAWISS BINT HASAN AL WIRGHI,           :
    as Next Friend of                  :
    Adil bin Muhammad al Wirghi,       :  No. 05-CV-1497 (RCL)
:
        Petitioners,                   :
:
        v.                             :
:
GEORGE W. BUSH, DONALD RUMSFELD,       :
ARMY BRIG. GEN. JAY HOOD, and ARMY     :
COL. MIKE BUMGARNER,                   :
:
        Respondents.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY BRIEF IN FURTHER SUPPORT OF PETITIONER'S EMERGENCY
MOTION FOR THIRTY-DAY-NOTICE ORDER, TEMPORARY RESTRAINING
ORDER, AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................. 1

Argument ................................................................................................................................ 2

I.     The Recent Decision of the D.C. Circuit in *Belbacha* Establishes that This Court Has Jurisdiction To Issue a Preliminary Injunction. ..................................... 2

II.    The Risk of Torture Facing Petitioner in Tunisia Is Real, Not Speculative. ............ 4

III.   Any Harm to Respondents if this Motion Is Granted Would Be at Most Negligible. ................................................................................................................. 7

Conclusion .............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al-Anazi* v. *Bush*,
   370 F. Supp. 2d 188 (D.D.C. 2005) ...................................................................................8

*Attash* v. *Bush*,
   No. 05-cv-1592 (D.D.C. Sept. 1, 2005) .............................................................................8

*Belbacha* v. *Bush*,
   No. 07-5258 (D.C. Cir. Mar. 14, 2008) ...................................................................*passim*

*Bell* v. *Hood*,
   327 U.S. 678 (1946).............................................................................................................3

*Benson* v. *McMahon*,
   127 U.S. 457 (1888).............................................................................................................8

*Boumediene* v. *Bush*,
   476 F.3d 981 (D.C. Cir. 2007).............................................................................................1

*Crosby* v. *Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000).............................................................................................................8

*Hamdi* v. *Rumsfeld*,
   542 U.S. 507 (2004).............................................................................................................9

*INS* v. *St. Cyr*,
   533 U.S. 289 (2001).............................................................................................................8

*Omar* v. *Harvey*,
   479 F.3d 1 (D.C. Cir. 2007)............................................................................................7, 8

*People's Mojahedin Org.* v. *U.S. Dep't of State*,
   182 F.3d 17 (D.C. Cir. 1999)...............................................................................................8

*United States* v. *United Mine Workers*,
   330 U.S. 258 (1947).............................................................................................................3

*Wang* v. *Ashcroft*,
   320 F.3d 130 (2d Cir. 2004)................................................................................................8

**STATUTES**

Military Commissions Act of 2006 ("MCA") ...................................................................2

All Writs Act, 28 U.S.C. § 1651 .......................................................................................3

## **PRELIMINARY STATEMENT**

Respondents' opposing memorandum ("Opp.") does not address, much less answer, many of Petitioner's specific factual demonstrations and legal arguments, preferring to rely on generalized recitations of government policy and decisions that do not represent the current state of the law.

Strikingly, the Opposition all but ignores (relegating to a single footnote) *Belbacha* v. *Bush*, No. 07-5258 (D.C. Cir. Mar. 14, 2008), a very recent and controlling decision of the Court of Appeals. *Belbacha* stands squarely for three propositions that support granting the present motion. First, this Court *does* have jurisdiction to enjoin Petitioner's transfer to Tunisia pending the resolution of his habeas case. Second, the stay previously issued in this case does not bar a ruling on the merits of this motion. Finally, should Petitioner prevail on the merits of his habeas case, the Government "might be without authority to transfer him" to a country where he would face abuse, torture, and unlawful detention. *Belbacha*, slip op. at 5. In light of last week's *Belbacha* decision, it is all the more important that this Court preserve its jurisdiction during the pendency of Petitioner's habeas petition by granting the present motion.

Respondents rely heavily on the Court of Appeals' decision in *Boumediene* v. *Bush*, 476 F.3d 981 (D.C. Cir. 2007), but the Supreme Court's grant of certiorari in that case, 127 S. Ct. 3078 (2007), has persuaded the Court of Appeals itself that the Guantánamo detainee cases "present[] a substantial jurisdictional question." *Belbacha*, slip op. at 7.

Respondents offer a lengthy recitation of U.S. policy regarding the transfer of detainees, but nowhere in this generalized policy explication is there any recognition

of, much less attention paid to, the particular circumstances and significant risks faced by Petitioner. Petitioner's concrete and credible fear that he, like other Tunisian detainees repatriated before him, will be tortured if returned to Tunisia is entirely ignored. Tunisia itself—a habitual human-rights-abusing state—is barely mentioned in Respondents' brief, and Tunisia's documented history of human rights abuses and torture merits no mention at all.

Finally, while the Government "oppose[s] petitioner's motion for an order requiring respondents to provide 30 days' notice of any transfer or removal of petitioner from Guantanamo Bay" (Opp. at 1), it says nothing about the other relief sought by Petitioner—a temporary restraining order ("TRO") and preliminary injunction enjoining respondent from releasing Petitioner to the Tunisian government. It would be reasonable to expect that if Respondents responsibly opposed the requested injunctive relief barring a transfer of Petitioner to Tunisia, they would not have relied upon an argument by implication.

## ARGUMENT

**I.     The Recent *Belbacha* Decision of the D.C. Circuit Establishes that This Court Has Jurisdiction To Issue a Preliminary Injunction.**

Respondents argue at length that this Court lacks jurisdiction to issue an order requiring 30 days' notice before a Guantánamo detainee may be transferred to a country where he will likely face torture. Respondents make no effort, however, to distinguish the many cases in which judges of this District have issued exactly such an order, exercising their authority under the All Writs Act to preserve jurisdiction while the court determines if it has jurisdiction. (Pet. Br. at 9 (citing six cases where courts of this

District have issued 30-day-notice orders); *see also Belbacha,* slip op. at 4 (*citing United States* v. *United Mine Workers*, 330 U.S. 258, 293 (1947); and *Bell* v. *Hood*, 327 U.S. 678 (1946)).) Rather, Respondents rely almost exclusively on Section 7 of the Military Commissions Act ("MCA") and on the Court of Appeals' decision on the merits in *Boumediene*. (Opp. at 6–8.) That authority, however, is questionable—and questioned—for *Boumediene* is currently before the Supreme Court and the correctness of that decision, and the constitutionality of Section 7 of the MCA, remain in doubt. (Pet. Br. at 14–15 (noting that the Supreme Court granted certiorari on the questions of whether the MCA jurisdiction-stripping provision is constitutional and whether detainees' habeas petitions warrant relief or a hearing on the merits).)

In *Belbacha*, the Court of Appeals eliminated all doubt that this Court has jurisdiction to issue an injunction prohibiting the transfer of Petitioner to a country where he is likely to be tortured. The Court held that "when the Supreme Court grants certiorari to review this court's determination that the district court lacks jurisdiction, a court can, pursuant to the All Writs Act, 28 U.S.C. § 1651, and during the pendency of the Supreme Court's review, act to preserve the status quo in other cases raising the same jurisdictional issue if a party satisfies the criteria for issuing a preliminary injunction." *Belbacha,* slip op. at 7. In light of *Belbacha*, and the ongoing uncertainty regarding *Boumediene* and Section 7 of the MCA, this Court should act to preserve its jurisdiction to rule on Petitioner's habeas petition.

Respondents argue that Petitioner "fail[s] to show a substantial likelihood of success on the merits." (Opp. at 9.)[1] In *Belbacha*, however, the Court of Appeals "conclude[d] that Belbacha's petition for a writ of habeas corpus is colorable" and that "[o]ur holding in *Boumediene* does not make [petitioner's] argument for jurisdiction of the district court less than colorable." *Belbacha*, slip op. at 5–6. The court concluded its decision by stating that "the probability of Belbacha's prevailing on the merits of his habeas petition is far from clear but, in light of the seriousness of the harm he claims to face, namely, torture at the hands of a foreign state . . . we cannot as the Government urged at oral argument say Belbacha's motion for a preliminary injunction fails as a matter of law." *Id.* at 11.[2]

## II.   The Risk of Torture Facing Petitioner in Tunisia Is Real, Not Speculative.

Respondents dismiss the urgent nature of this motion, stating that "Petitioner *supposes* that, at some point in the future, respondents *might* transfer him to his home country." (Opp. at 2 (emphasis added).) Respondents entirely ignore the notification received by Petitioner on February 7, 2008, that he had "been approved to leave Guantanamo subject to the process of making appropriate diplomatic arrangements for his departure." (Pet. Br. Exhibit B.) The Government's own words make clear that

---

[1]   Respondents have conceded that the stay currently in place in this case does not preclude the Court from ruling on the merits of this motion. Respondents offer no objection to this Court ruling on the motion and in fact urge the Court to do so. (Opp. at 2.)

[2]   The dissenting opinion in *Belbacha* disagreed only with the decision to remand to the District Court. Judge Randolph in dissent reasoned that the Court of Appeals itself should have issued a stay "for the traditional reasons—because there is a substantial chance the [Supreme] Court's decision will affect Belbacha's case and because he would suffer irreparable harm." *Id.* at 12 (Randolph, J., dissenting).

Petitioner's repatriation to Tunisia may occur whenever the Government deems it "appropriate": next month, next week, or sooner.

Respondents state that "[i]t is the policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured." (Opp. at 3; Declaration of Clint Williamson attached as Exhibit 2 to Opp. ("Williamson Dec.") ¶ 4; Declaration of Joseph Benkert attached as Exhibit 3 to Opp. ("Benkert Dec.") ¶ 6.) In light of this policy imperative, it is striking that Respondents' opposition brief fails to respond in any way to the concrete and credible evidence that demonstrates the likelihood that, notwithstanding diplomatic assurances to the contrary, Petitioner will face torture if returned to Tunisia. (*See* Pet. Br. at 3–9.)

The prospect that Petitioner will be tortured is not "speculative," as Respondents would have this Court believe. (Opp. at 2.) The brutal mistreatment and torture suffered by other Guantánamo detainees whom the United States has repatriated to Tunisia is neither supposition nor speculation, nor is the prospect that Petitioner will meet the same fate. (Pet. Br. at 6–8.) Despite the evidence offered to support Petitioner's real and non-speculative fear of torture, nowhere in either the opposing memorandum or the attached declarations do Respondents so much as *mention* Lotfi Ben Swei Lagha or Abdellah Ben Omar al Hajji, two former Guantánamo detainees who suffered torture

upon their return to Tunisia. (*See id.* at 5–7.)³ In fact, the Williamson and Benkert Declarations, both written more than nine months ago, make no mention of Tunisia.⁴

The most recent U.S. Department of State Country Report on Human Rights presents a litany of examples of persons in Tunisian custody—notably political prisoners and alleged terrorists—who have been subjected to the most brutal and vicious torture and other mistreatment, including beating, burning, and sexual abuse.⁵ This report was issued on March 11, 2008, three days before Respondents' opposition brief was submitted to this Court, and may not have come to the attention of Respondents' counsel, but the portrait of pervasive torture and other human rights violations was similarly painted in the 2006 State Department Report previously cited by Petitioner (*see* Pet. Br. at 3–5) and totally ignored in Respondents' opposing memorandum.

Despite the care purportedly taken by the Government in obtaining assurances from transferee countries (Opp. at 11–12), both Mr. Lagha and Mr. al Hajji were in fact tortured on their return to Tunisia from the Guantánamo Bay Naval Station. The protocol for seeking and receiving diplomatic assurances described in Respondents' opposing memorandum has failed, despite U.S. law and policy, to provide sufficient safeguards to protect detainees against being tortured upon repatriation to Tunisia.

---

³ *See also* HUMAN RIGHTS WATCH, ILL-FATED HOMECOMINGS: A TUNISIAN CASE STUDY OF GUANTANAMO REPATRIATIONS (Sept. 2007), attached as Exhibit H to Pet. Br; HUMAN RIGHTS WATCH, WORLD REPORT 2008 – TUNISIA, attached as Exhibit G to Pet. Br.

⁴ Respondents assert that granting Petitioner's motion for an injunction is tantamount to "conclud[ing] that the United States' policies and practices are somehow a sham." (Opp. at 12.) Far from it. Petitioner offers no comment on the legitimacy of general U.S. policy, nor does he ask this Court to do so. Rather, the motion asks only that this Court consider the particular, individual risks faced by Petitioner.

⁵ U.S. DEP'T OF STATE, 2007 COUNTRY REPORT ON HUMAN RIGHTS PRACTICES – TUNISIA (March 11, 2008), available at http://www.state.gov/g/drl/rls/hrrpt/2007/100607.htm.

Finally, Respondents claim that Petitioner's motion to prevent his repatriation to a country that will torture him "turns the idea of habeas corpus . . . on its head." (Opp. at 13.)[6] In making this assertion, Respondents again completely ignore, and make no attempt to distinguish, the law of this Circuit, which speaks to this very point. (Pet. Br. at 10–11 citing *Omar* v. *Harvey*, 479 F.3d 1, 15 (D.C. Cir.), *cert. granted sub nom.*, *Geren* v. *Omar*, 128 S. Ct. 741 (2007) (holding that transferring a habeas petitioner into the custody of Iraqi authorities "would not afford [him] all the relief he could obtain through a writ of habeas corpus").) Accordingly, it is imperative that this Court act to preserve its jurisdiction pending the resolution of the *Boumediene* case and the resolution of Petitioner's habeas claim. If the Court does not do so, the risk that Petitioner will be tortured if repatriated is substantial, and the harm unquestionably irreparable.

### III. Any Harm to Respondents if this Motion Is Granted Would Be at Most Negligible.

The "serious and unprecedented harms" (Opp. at 13) that Respondents suggest may result from the granting of this motion are greatly overstated. An order of this Court preserving its jurisdiction over a pending habeas corpus petition will have no adverse impact on the Executive's ability to wage war or conduct foreign policy. Respondents make much of the need to ensure the confidentiality of sensitive negotiations surrounding transfer. (Opp. at 13; Williamson Dec. at 6–7). Petitioner acknowledges the legitimacy of that concern. Petitioner has not requested that any assurances by the Tunisian government, or related negotiations, be made public. Should

---

[6] Respondents ignore the fact that Petitioner was not taken into U.S. custody in Tunisia, had left Tunisia almost two decades ago and has not resided there since. To return Petitioner to detention and torture in a country on which he turned his back many years before is hardly the relief contemplated by the writ of habeas corpus.

such assurances be given by the Tunisian government, they could be submitted to this Court under seal.

This case involves a single individual, detained by the United States, who is at imminent risk of being transferred to a country where there is clear evidence that he will face torture. There is ample case law to support the proposition that this Court has authority to enjoin the Government from transferring a detainee to torture, and that to do so does not unduly intrude on the conduct of foreign policy. *See Omar* v. *Harvey*, 479 F.3d at 10 (holding that "countless other cases make clear that courts may determine whether the Executive possesses the necessary authority for transfer"); *see also Benson* v. *McMahon*, 127 U.S. 457, 462 (1888); *INS* v. *St. Cyr*, 533 U.S. 289 (2001); *Wang* v. *Ashcroft*, 320 F.3d 130, 141 (2d Cir. 2003). *Belbacha* establishes that earlier cases from courts in this district that held there was no jurisdiction for judicial oversight of detainee transfers, such as *Al-Anazi* v. *Bush*, 370 F. Supp. 2d 188 (D.D.C. 2005, Bates, J.) and *Attash* v. *Bush*, No. 05-cv-1592 (D.D.C. Sept. 1, 2005, Lamberth, J.), have been overruled.

Those few cases upon which Respondents rely to argue that an injunction barring transfer would "undermine the government's ability to conduct foreign affairs" are easily distinguished. (*See*, *e.g.*, Opp. at 13, *citing Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (striking down a Massachusetts law placing restrictions on doing business with Burma as pre-empted by federal law and in violation of the Supremacy Clause)); (Opp. at 10, citing *People's Mojahedin Org.* v. *Dep't of State*, 182 F.3d 17 (D.C. Cir. 1999) (denying a foreign organization's challenge to a State Department determination that it was a foreign terrorist organization).) Those cases bear

little resemblance to Petitioner's motion, and are of no value in assessing its merits. In fact, one of the decisions Respondents cite, *Hamdi* v. *Rumsfeld*, supports the very position Petitioner asserts, holding that "it does not infringe on the core role of the military for the courts to exercise their own time-honored and constitutionally mandated roles of reviewing and resolving claims like those presented here." 542 U.S. 507, 535 (2004).

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in his opening brief, the Court should provide Mr. El Ouerghi's counsel with a 30-day notice of any transfer and enjoin the Government from releasing Mr. El Ouerghi to Tunisia. Petitioner Adel El Ouerghi respectfully requests that his motion be granted in full.

Dated: March 19, 2008     Respectfully submitted,

/s/ Michael A. Cooper
Michael A. Cooper
Suhana S. Han
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588

*Counsel for Petitioners Adil bin Muhammad al Wirghi and Tawiss bint Hasan al Wirghi*

Of Counsel
Wells Dixon
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499